UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| PRINCE AJAMU KHALFANI-EL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:09-CV-69 SNLJ |
| | ) | |
| OMER CLARK, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiff filed a motion for summary judgment on October 25, 2010 (#34), to which the defendants have filed a response (#40). Defendants Omer Clark, John Williams, Keith Mays, Dan Martinez, Tom Vilmer, Allen Hughes, Cheryl Dowdy, and Matthew Raymond filed their motion for summary judgment on November 15, 2010 (#42), and the time for responding has passed.

**I. Case Summary**

This is a Section 1983 action in which plaintiff, a prisoner formerly incarcerated at the Southeast Correctional Center in Charleston, Missouri, alleges that defendants on the prison Censorship Committee — Clark, Williams, Mays, Vilmer, Hughes, Dowdy, and Raymond — violated his First Amendment rights by improperly censoring four mail items. Specifically, plaintiff alleges that

(1) Defendants Vilmer, Mays, and Williams improperly censored pamphlets from Kansas Mutual Aid on March 11, 2008;

(2) Defendants Vilmer, Dowdy, and Mays improperly censored other materials from

Kansas Mutual Aid on April 22, 2008;

  (3) Defendants Clark, Williams, and Hughes improperly censored the February 2008 issue of periodical *Under Lock & Key* on August 7, 2008; and

  (4) Defendants Clark, Hughes, and Raymond improperly censored the September 2008 issue of *Under Lock & Key* on October 20, 2008.

  Furthermore, plaintiff contends that defendants Vilmer, Clark, and Martinez violated his First and Fourteenth Amendment rights by denying or refusing to accept offender grievances from plaintiff relating to the censorship.[1]

  The defendants argue in their brief that plaintiff's motion should be denied because he failed to follow Local Rule 7-4.01(A), which requires that the moving party file a statement of uncontroverted material facts with its motion for summary judgment. Defendants, however, are hard pressed to argue noncompliance with the Local Rules, given that they themselves failed to include a statement of uncontroverted material facts with their own motion. Plaintiff has been permitted to proceed *in forma pauperis* in this case, and he is representing himself *pro se*. Although neither party should be excused from the failure to comply with the Local Rules, in the interest of judicial and other economies, the Court will proceed with disposition of these motions on the current record, which is not factually intensive.

---

[1] Plaintiff includes "defendant Mike Kemna" in his memorandum, but Mr. Kemna is not a party to this lawsuit. On April 12, 2010, plaintiff filed a Motion to Amend his Complaint (#23), which the Court granted in part and denied in part on May 27, 2010 (#27). The Court denied the motion to the extent that plaintiff attempted to add defendants related to a different cause of action. Allegations in the Amended Complaint regarding Mr. Kemna relate to a different cause of action from that being litigated in this case. As a result, process was never issued as to Mr. Kemna, thus, to the extent plaintiff seeks summary judgment against him, it is denied as moot.

## II. Summary Judgment Standard

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. *New England Mut. Life Ins. Co. v. Null*, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." *Mt. Pleasant v. Associated Elec. Coop. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988).

Pursuant to Fed. R. Civ. P. 59(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962). The burden is on the moving party. *Mt. Pleasant*, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party.

*Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976). With these principles in mind, the Court turns to the discussion.

**III. Discussion**

Plaintiff and the defendants all purport to seek complete summary judgment.

**A.  Claims Against Defendants In Their Official Capacities**

To the extent plaintiff seeks to sue defendants in their official capacities, those claims will be dismissed. Under the Eleventh Amendment, damages are not recoverable against the State or state officials acting in their official capacities. *Nix v. Norman*, 879 F.2d 429, 432-33 (8th Cir. 1989). Thus, plaintiff's claims against the defendants in their official capacities will be dismissed.

**B.  Censorship Claims**

Next the Court turns to plaintiff's claims that defendants improperly censored both materials sent to him by Kansas Mutual Aid and two issues of the periodical *Under Lock & Key*.

"Although prisoners retain their constitutional rights, limitations may be placed on the exercise of those rights in light of the needs of the penal system. Constitutional claims that would otherwise receive strict scrutiny analysis if raised by a member of the general population are evaluated under a lesser standard of scrutiny in the context of a prison setting." *Murphy v. Missouri Dept. of Corrections*, 372 F.3d 979, 982 (8th Cir. 2004) (citing *Turner v. Safley*, 482 U.S. 78, 81 (1987)).

The United States Supreme Court has specifically addressed regulations involving the review of incoming mail in prisons, determining that such regulations need only be "reasonably related to legitimate penological interests." *Thornburgh v. Abbott*, 490 U.S. 401, 404 (1989)

(citing *Turner*, 482 U.S. at 89). "A regulation that allows for censorship of incoming items that are likely to incite violence is related to the institutional needs of maintaining a controlled and secure environment among the prison population." *Murphy*, 372 F.3d at 985; *see also Ortiz v. Fort Dodge Corr. Facility*, 368 F.3d 1024, 1026-27 (8th Cir.2004). A regulation valid and neutral in other respects may be invalid if it is applied to the particular items in such a way that negates the legitimate concerns. *See Thornburgh*, 490 U.S. at 419, 109 S.Ct. 1874. Courts must therefore ask "whether a ban on these particular items is reasonably related to a legitimate penological objective." *Williams v. Brimeyer*, 116 F.3d 351, 354 (8th Cir.1997).

*Turner* provides four factors that courts should consider in making that determination. First, we ask whether there is a "valid rational connection" between the prison regulation and the government interest justifying it. *Turner*, 482 U.S. at 89-90. Second, courts consider whether there is an alternative means available to the prison inmates to exercise the right. *Id.* at 90. Third, courts examine whether an accommodation would have "a significant 'ripple effect'" on the guards, other inmates, and prison resources. *Id.* Finally, courts evaluate whether there is an alternative that fully accommodates the prisoner "at de minimis cost to valid penological interests." *Id.* at 90-91.

The safety and security of a prison facility is a neutral, legitimate government interest. *Thornburgh*, 490 U.S. at 415; *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987); *Dawson v. Scurr*, 986 F.2d 257, 260 (8th Cir. 1993). "Conclusory" statements regarding a publication's "inflammatory" nature are insufficient, however, and the defendants must present "some specific evidence of why this particular item implicates prison concerns." *Murphy*, 372 F.3d at 986. The Court will conduct an "independent review of the evidence" to determine if there has been "an

exaggerated response to prison concerns" in relation to the items in question. *Williams*, 116 F.3d at 354 (citation omitted); *see also Murphy*, 372 F.3d at 982.

Plaintiff argues that the defendants violated his First Amendment right to free speech when they censored the four items at the heart of this lawsuit. Defendants state they were following valid Missouri Department of Corrections ("MDOC") regulations that exist for the security of MDOC prison facilities. Per those regulations, defendants argue, the Censorship Committee reviewed plaintiff's documents and found potential security concerns.

As a general matter, plaintiff appears to make a facial challenge to MDOC Offender Mail Procedure IS 13-1.1, the regulation that the defendants followed when they censored his incoming mail. However, the Eighth Circuit has held that the policy is facially valid, *see, e.g.*, *Murphy*, 372 F.3d at 986, so summary judgment will be denied as to that issue. Plaintiff also claims that the regulation as applied to particular publications violates his constitutional rights, so the censorship of each of those publications will be considered individually.

### 1. Kansas Mutual Aid Pamphlets (Censored March 11 and April 22, 2008)

Plaintiff alleges that defendants Vilmer, Mays, and Williams improperly censored pamphlets from Kansas Mutual Aid on March 11, 2008, and that defendants Vilmer, Dowdy, and Mays improperly censored other materials from Kansas Mutual Aid on April 22, 2008. The Court's review of these materials is impeded by two issues.

First, defendants address only one of the two instances of censorship alleged by plaintiff. Defendants address the March 11 censoring in their memorandum, but they refer to and attach the Censorship Notification dated April 14, 2008, which states that four pamphlets containing

"inflammatory material based on race or religion" were reviewed and censored on April 22, 2008. No second Notification is attached or discussed by the defendants. Thus, defendants discuss the March 11 censorship without attaching the relevant censorship notification, and they attach the relevant censorship notification for the April 22 censorship without discussing it. (*See* Doc. #44 at 2.)

Second, and critically, the defendants did not provide copies of the censored materials for the Court's review. A sticker attached to the provided April 14 Censorship Notification notes that the censored material was "mailed out per policy at offender's expense on 7/17/08." Thus, counsel for defendant states that those pamphlets are no longer in the possession of defendants or the Missouri Department of Corrections. Counsel states that he has not been able to find copies of the pamphlets at any library or online search engine. However, counsel does not indicate whether he has subpoenaed or even contacted Kansas Mutual Aid. Because the Court is not able to review the materials, the Court cannot find that there is no issue of material fact with respect to censorship of any of the Kansas Mutual Aid materials. *See Murphy*, 372 F.3d at 986 (holding that although MDOC's procedures and policy were "reasonably related to legitimate penological interests," a material issue of fact existed where MDOC "documented its conclusion only with the statement that the issue was 'so racially inflammatory as to be reasonably likely to cause violence' and provided no "specific evidence of why this particular item implicates prison concerns.")

    2.  *Under Lock & Key* **Publications**

Defendants do not have a blanket policy of censoring *Under Lock & Key*, but rather they state they censor only those items "that pose a security risk to offenders, staff, and visitors to a

MDOC facility." (Doc. #43 at 8.) Both censored issues of *Under Lock & Key*, which have been provided to the Court under seal, are 12 pages long, and the publication states that it is a Publication of the Maoist International Ministry of Prisons. Its full title appears to be "*The Voice of the Anti-Imperialist Movement from Under Lock & Key*." Each censored issue of *Under Lock & Key* is discussed in turn below.

### a. February 2008 Issue (Censored August 7, 2008)

Defendant Omer Clark states that he "censored this publication because the main focus of this publication is that the correctional system throughout the nation discriminates against African-Americans. A publication like this within the [SECC] prison population would stir up tension within the facility and create a security issue." (Doc. #44-16 at ¶ 4.) Defendant Clark does not cite to a particular page or article of the publication, nor does counsel offer any more analysis. The first article in the publication discusses the rate of imprisonment across the United States for different races. Other articles highlight how the prison system is otherwise unfair to African-Americans and promotes "modern day slavery." Prison officials are frequently referred to in derogatory or racially-charged terms. From this, the Court cannot say that it appears that the Censorship Committee was motivated to censor this publication by anything other than a concern for legitimate penal interests.

### b. September 2008 Issue (Censored October 20, 2008)

Defendants state that they censored this publication because "page 3 of the publication promoted violence or disorder and threatened institutional safety or security.... Specifically, the publication, especially page 3, promoted violence toward correctional staff members and

expressed sentiments of hostility toward correctional staff amongst the offender population, again presenting concerns of tension in a prison facility and issues of safety and security." (Doc. #43 at 7-8.) The publication does appear to encourage prisoners to "fight back" and "unite against the injustice system" at page 3. Again, the Court cannot say that it appears that the Censorship Committee was motivated to censor this publication by anything other than a concern for legitimate penal interests.

Thus, summary judgment will be granted to the defendants with respect to the censoring of the two *Under Lock & Key* publications.

### C. Grievance Procedure Claims

Plaintiff contends that defendants Clark, Vilmer, and Martinez violated his First and Fourteenth Amendment rights by denying or refusing to accept offender grievances from plaintiff relating to censoring of his mail.

However, inmates do not have a constitutionally protected right to the prison grievance process. *See Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.1991); *see also Burnside v. Moser*, 138 Fed. Appx. 414 (3rd Cir. 2005). And, "a state grievance procedure does not confer any substantive constitutional right upon prison inmates." *Hoover v. Watson*, 886 F. Supp. 410, 418 (D. Del.1995), *aff'd* 74 F.3d 1226 (3d Cir. 1995). Therefore, "the denial of grievances, in and of itself, cannot support a substantive constitutional claim." *Walls v. Highsmith*, 2007 WL 4468694 at *2 (E.D. Mo. Dec. 17, 2007), citing *Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002). *See also Bostic v. Babich*, 2008 WL 906801 at *7 (E.D. Mo. Apr. 3, 2008) (internal quotations and citations omitted) ("The denial of [a grievance] is insufficient to impose liability and does not result in a constitutional violation.").

Plaintiff argues that defendants Vilmer, Clark, and Martinez violated his due process rights established by *Pecunier v. Martinez*, 416 U.S. 396 (1974) in denying his grievances related to the censorship. However, "[o]nly persons who cause or participate in the [Constitutional] violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." *George v. Smith*, 507 F.3d 605, 609 (7th Cir.2007) (citations omitted); *Buckler v. Larkins*k, 2009 WL 3719456, at *4 (E.D. Mo. Nov. 4, 2009).

Defendant Martinez is the only defendant who has moved for summary judgment on this claim. However, the Court will dismiss these claims against defendants Clark, Vilmer, and Martinez under 28 U.S.C. § 1915. Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court may dismiss a complaint filed *in forma pauperis* at any time if the plaintiff fails to state a claim upon which relief can be granted. An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). Even given the benefit of a liberal construction, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and weighing all factual allegations in favor of the plaintiff, *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992), *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), plaintiff's complaint regarding the grievance process he employed following the censorship of incoming mail fails to state a claim and shall be dismissed pursuant to Section 1915(e)(2)(B).

### D. Qualified Immunity

"Qualified immunity is a defense available to government officials if they have not violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Amrine v. Brooks*, 522 F.3d 823, 831 (8th Cir. 2008) (quoting *Young v. Selk*, 508

F.3d 868, 871 (8th Cir.2007); *see Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It "allows officers to make reasonable errors so that they do not always 'err on the side of caution' " for fear of being sued. *Habiger v. City of Fargo*, 80 F.3d 289, 295 (8th Cir. 1996) (citation omitted); *see Davis v. Scherer*, 468 U.S. 183, 196 (1984). "This defense provides 'ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Amrine*, 522 F.3d at 831 (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 341 (1986)).

Qualified immunity determinations are based on a two-part inquiry. First, the court determines whether the alleged facts, viewed in the light most favorable to the injured party, demonstrate that the official's conduct violated a constitutional right. *Amrine*, 522 F.3d at 831; *see also Saucier v. Katz,* 533 U.S. 194, 201 (2001). Second, if the answer to that inquiry is yes, the court asks whether the constitutional right was clearly established at the time so that a reasonable officer would have understood that his conduct violated that right. *Amrine*, 522 F.3d at 831.

The defendants argue that they should receive qualified immunity because "it is not clear that a reasonable officer in the position of the Censorship Committee Defendants would have known that censoring Plaintiff's incoming mail items violated Plaintiff's First Amendment rights under current case law concerning mail entering a prison facility." (Doc. #43 at 14-15.) However, the law is clearly established that regulations involving the review of incoming mail in prisons (and application of those regulations) must be "reasonably related to legitimate penological interests." *Thornburgh*, 490 U.S. at 404 (1989) (citing *Turner*, 482 U.S. at 89).

The Court has already granted summary judgment as to the censoring of the *Under Lock & Key* publications. As for the Kansas Mutual Aid materials, however, it is unclear whether the

-11-

Censorship Committee Defendants violated clearly established law because they have not produced the Kansas Mutual Aid pamphlets for review.

## IV. Conclusion

Summary judgment will be granted to defendants Clark, Williams, Hughes, and Raymond on claims regarding censorship of the *Under Lock & Key* publications. The Court will dismiss, pursuant to 28 U.S.C. § 1915(e)(2)(B), plaintiff's claims regarding grievance procedures against defendants Vilmer, Clark, and Martinez. Remaining for trial in this case are plaintiff's claims regarding the March 11, 2008 and April 22, 2008 censorship of materials sent to him from Kansas Mutual Aid.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's Motion for Summary Judgment (#34), filed October 25, 2010 is **DENIED.**

**IT IS FURTHER ORDERED** that defendants' Motion for Summary Judgment (#42), filed November 15, 2010 is **GRANTED** in part and **DENIED** in part in the following respects:

- any claims against defendants in their official capacities are **DISMISSED**.
- defendants' motion for summary judgment regarding plaintiff's claim that defendants Vilmer, Mays, Dowdy, and Williams improperly censored materials received from Kansas Mutual Aid on March 11, 2008 and April 22, 2008 is **DENIED** without prejudice to refiling with copies of the materials.
- defendants' motion for summary judgment regarding plaintiff's claim that defendants Clark, Williams, and Hughes improperly censored the February

2008 issue of periodical *Under Lock & Key* on August 7, 2008 is

> **GRANTED**.

- defendants' motion for summary judgment regarding plaintiff's claim that defendants Clark, Hughes, and Raymond improperly censored the September 2008 issue of *Under Lock & Key* on October 20, 2008 is **GRANTED**.

**IT IS FINALLY ORDERED** that plaintiff's claims against defendants Vilmer, Clark, and Martinez regarding their handling of plaintiff's grievances are **DISMISSED**.

Dated this  2nd  day of February, 2011.

_____
UNITED STATES DISTRICT JUDGE