UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| PRINCE AJAMU KHALFANI-EL, | ) |
| Plaintiff, | ) |
| vs. | ) No. 1:09-CV-69 SNLJ |
| OMER CLARK, et al., | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This is a Section 1983 action in which plaintiff, a prisoner formerly incarcerated at the Southeast Correctional Center in Charleston, Missouri, alleges that defendants on the prison Censorship Committee violated his First Amendment rights by improperly censoring several items of incoming mail. Defendants attached two of the four mail items to their first motion for summary judgment (#42), but defendants stated they were unable to locate copies of the remaining two items. On February 2, 2011, this Court granted partial summary judgment to the defendants with respect to the prison's censoring of two of the four mail items, and the Court granted leave to file another motion for summary judgment with respect to the remaining two mail items.

On March 4, 2011, defendants filed a supplemental motion for summary judgment — attaching the remaining mail items at issue and requesting summary judgment as to the censorship of those items (#47). The time for responding has passed.

**I. Case Summary**

Plaintiff alleges that defendants on the prison Censorship Committee — Omer Clark,

John Williams, Keith Mays, Dan Martinez, Tom Villmer, Allen Hughes, Cheryl Dowdy, and Matthew Raymond — violated his First Amendment rights by improperly censoring four mail items. This Court has already granted summary judgment with respect to two mail items and to defendants' handling of plaintiffs' grievances. The only remaining issues in this case, then, are as follows:

(1) Whether defendants Villmer, Mays, and Williams improperly censored pamphlets from Kansas Mutual Aid on March 11, 2008; and

(2) Whether defendants Villmer, Dowdy, and Mays improperly censored pamphlets from Kansas Mutual Aid on April 22, 2008.

As it turns out, the pamphlets censored on both March 11 and April 22, 2008 are identical. The four pamphlets received and then censored on March 11 are titled "Enemies of the State," "Message to the Black Movement," "The Evolution of Ghetto-Style Organizations," and "The Black Panthers: Revolutionary Homicide." The four pamphlets received and censored on April 22 are the same. Defendants filed under seal copies of all eight pamphlets. (*See* #48).

The defendants filed a Statement of Undisputed Material Facts (#49-1), to which the plaintiff has not responded. Those facts will thus be deemed admitted for the purposes of summary judgment. *See* Local Rule 7-4.01(E).

## II. Summary Judgment Standard

Pursuant to Fed. R. Civ. P. 59(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467 (1962). The burden is on the moving

party. *Mt. Pleasant v. Associated Elec. Coop. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976). With these principles in mind, the Court turns to the discussion.

## III. Discussion

Plaintiff claims that defendants improperly censored the pamphlets sent to him by Kansas Mutual Aid. As this Court explained in its February 2, 2011 Order, "Although prisoners retain their constitutional rights, limitations may be placed on the exercise of those rights in light of the needs of the penal system. Constitutional claims that would otherwise receive strict scrutiny analysis if raised by a member of the general population are evaluated under a lesser standard of scrutiny in the context of a prison setting." *Murphy v. Missouri Dept. of Corrections*, 372 F.3d 979, 982 (8th Cir. 2004) (citing *Turner v. Safley*, 482 U.S. 78, 81 (1987)).

The United States Supreme Court has determined that regulations involving the review of

incoming mail in prisons need only be "reasonably related to legitimate penological interests." *Thornburgh v. Abbott*, 490 U.S. 401, 404 (1989) (citing *Turner*, 482 U.S. at 89). "A regulation that allows for censorship of incoming items that are likely to incite violence is related to the institutional needs of maintaining a controlled and secure environment among the prison population." *Murphy*, 372 F.3d at 985; *see also Ortiz v. Fort Dodge Corr. Facility*, 368 F.3d 1024, 1026-27 (8th Cir. 2004). A regulation valid and neutral in other respects may be invalid if it is applied to the particular items in such a way that it negates the legitimate concerns. *See Thornburgh*, 490 U.S. at 419, 109 S.Ct. 1874. Courts must therefore ask "whether a ban on these particular items is reasonably related to a legitimate penological objective." *Williams v. Brimeyer*, 116 F.3d 351, 354 (8th Cir. 1997).

*Turner* provides four factors that courts should consider in making that determination. First, we ask whether there is a "valid rational connection" between the prison regulation and the government interest justifying it. *Turner*, 482 U.S. at 89-90. Second, courts consider whether there is an alternative means available to the prison inmates to exercise the right. *Id.* at 90. Third, courts examine whether an accommodation would have "a significant 'ripple effect'" on the guards, other inmates, and prison resources. *Id.* Finally, courts evaluate whether there is an alternative that fully accommodates the prisoner "at de minimis cost to valid penological interests." *Id.* at 90-91.

The safety and security of a prison facility is a neutral, legitimate government interest. *Thornburgh*, 490 U.S. at 415; *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987); *Dawson v. Scurr*, 986 F.2d 257, 260 (8th Cir. 1993). "Conclusory" statements regarding a publication's "inflammatory" nature are insufficient, however, and the defendants must present "some specific

evidence of why this particular item implicates prison concerns." *Murphy*, 372 F.3d at 986. The Court will conduct an "independent review of the evidence" to determine if there has been "an exaggerated response to prison concerns" in relation to the items in question. *Williams*, 116 F.3d at 354 (citation omitted); *see also Murphy*, 372 F.3d at 982.

Plaintiff argues that the defendants violated his First Amendment right to free speech when they censored the pamphlets. Defendants state they were following valid Missouri Department of Corrections ("MDOC") regulations that exist for the security of MDOC prison facilities. Specifically, defendants followed MDOC Offender Mail Procedure IS 13-1.1, which states that "offenders shall not be allowed to receive publications or any items that...are so racially inflammatory as to be reasonably likely to cause violence." Per those regulations, defendants argue, the Censorship Committee reviewed the pamphlets sent by Kansas Mutual Aid and found potential security concerns.

As discussed in the Court's February 2, 2011 Order, the Eighth Circuit has held that the policy is facially valid, *see, e.g.*, *Murphy*, 372 F.3d at 986, so summary judgment has been denied as to that issue. Because plaintiff also claims that the defendants unconstitutionally censored the materials based on their personal beliefs and not the regulation, the censorship of each of the pamphlets sent by Kansas Mutual Aid will be considered individually.

Plaintiff alleges that defendants Villmer, Mays, and Williams improperly censored the pamphlets from Kansas Mutual Aid on March 7-11, 2008, and that defendants Villmer, Dowdy, and Mays improperly censored the pamphlets again on April 16-22, 2008. Each defendant has furnished the Court with an affidavit explaining why he or she made the decision to censor the pamphlets.

### A. "Enemies of the State"

The full title of this pamphlet is "Enemies of the State: a frank discussion of past political movements, victories and errors, and the current political climate for revolutionary struggle within the u.s.a. [sic] with European-American anti-imperialist political prisoners Marilyn Buck, David Gilbert, and Laura Whitehorn."

The defendants have submitted affidavits explaining why they believed it was necessary to censor this pamphlet in the interest of prison safety and security. Defendants Villmer, Mays, Williams, and Dowdy each stated that their decisions to censor the pamphlet in March and April 2008 were guided by the policy and not by personal beliefs or prejudices. Further, the defendants gave specific reasons for why the pamphlet threatened prison security. Defendants point to several portions of the pamphlets that advocate violence, including support of "armed struggle" against "forces of repression" and numerous other, less-vague references to violence against enemies of minorities.

Defendant Williams stated that he was concerned that the pamphlet advocated overthrowing the government for racial reasons, and the other defendants had similar views. The Court cannot say that it appears that defendants Villmer, Mays, Williams, and Dowdy were motivated to censor this publication by anything other than a concern for legitimate penal interests.

### B. "Message to the Black Movement"

The full title of this pamphlet is "Message to the Black Movement: A Political Statement From the Black Underground, Coordinating Committee, Black Liberation Army, CC-BLA." The defendants' affidavits again explain why they believed it was necessary to censor this

pamphlet in the interest of prison safety and security. Defendants Villmer, Mays, Williams, and Dowdy each stated that their decisions to censor the pamphlet were guided by policy and not by personal beliefs or prejudices. Further, the defendants quote specific passages to support their belief that the pamphlet threatened prison security. Defendants point to several portions of the pamphlets that advocate violence, including more references to "armed struggle," bloodshed, and "revolutionary violence" which may encourage and incite violence. Defendant Dowdy states that she censored the pamphlet because "it speaks of building an armed front and violent uprising along racial lines." Again, the Court cannot say that it appears that defendants Villmer, Mays, Williams, and Dowdy were motivated to censor this publication by anything other than a concern for legitimate penal interests.

### C. "The Evolution of Ghetto-Style Organizations."

The title of this pamphlet — "The Evoluation of Ghetto-Style Organizations" — is essentially, according to defendant Villmer, a reference to street gangs. The defendants' affidavits again explain why they believed it was necessary to censor this pamphlet in the interest of prison safety and security. Defendants Villmer, Mays, Williams, and Dowdy each stated that their decisions to censor the pamphlet were guided by policy and not by personal beliefs or prejudices. Further, the defendants quoted specific passages to support their belief that the pamphlet threatened prison security. The passages specifically advocate "revolution" within prison through violence, and the defendants' affidavits indicate they were concerned about the safety and security of the prison should this material enter the facility. Defendant Dowdy, in particular, stated that she censored the pamphlet because "it is highly critical of the criminal justice system, especially in relation to its treatment of prisoners of color." Again, the Court

cannot say that it appears that defendants Villmer, Mays, Williams, and Dowdy were motivated to censor this publication by anything other than a concern for legitimate penal interests.

### D. "The Black Panthers: Revolutionary Homicide."

The final pamphlet from Kansas Mutual Aid is "The Black Panthers: Revolutionary Homicide." The defendants' affidavits again explain why they believed it was necessary to censor this pamphlet in the interest of prison safety and security. Defendants Villmer, Mays, Williams, and Dowdy each stated that their decisions to censor the pamphlet were guided by policy and not by personal beliefs or prejudices. Further, the defendants quote specific passages to support their belief that the pamphlet threatened prison security. Defendants point to several portions of the pamphlets that advocate or incite violence, including a violent cartoon and other depictions of violence specifically involving police officers. The defendants' affidavits indicate they were concerned about the pamphlet's militant racial views and encouragement of violent overthrow of prisons and government. Defendant Dowdy stated that she censored the pamphlet because "it speaks of armed violence as a response to police violence." Again, the Court cannot say that it appears that defendants Villmer, Mays, Williams, and Dowdy were motivated to censor this publication by anything other than a concern for legitimate penal interests.

## IV. Conclusion

Summary judgment will be granted to defendants Villmer, Mays, Williams, and Dowdy on claims regarding censorship of the pamphlets sent to plaintiff by Kansas Mutual Aid. Because no claims exist for trial, judgment will be granted for the defendants.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' Supplemental Motion for Summary Judgment (#47), filed March 4, 2011 is **GRANTED.**

**IT IS FURTHER ORDERED** that **JUDGMENT** is hereby entered for defendants.

Dated this  19th  day of May, 2011.

                                           UNITED STATES DISTRICT JUDGE